# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EUGENE BARBER, | Case No.  1:25-cv-01052-BAM (PC) |
| Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION |
| v. | |
| NAVARRETE, *et al.*, | FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF ACTION FOR FAILURE TO STATE A CLAIM |
| Defendants. | |
| | (ECF No. 10) |
| | **FOURTEEN (14) DAY DEADLINE** |

Plaintiff James Eugene Barber ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  On February 17, 2026, the Court screened Plaintiff's complaint and granted him leave to amend.  (ECF No. 9.)  Plaintiff's first amended complaint, filed on March 23, 2026, is currently before the Court for screening.  (ECF No. 10.)

## I.    Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

1

relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b); 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**II.    Plaintiff's Allegations**

Plaintiff is currently housed at California State Prison, Corcoran.  The events in the complaint are alleged to have occurred while Plaintiff was housed at Kern Valley State Prison ("KVSP").  Plaintiff names the following defendants: (1) Officer Jose Navarrete (also referred to as Defendant A); (2) Officer Carlos Huerta-Silva (also referred to as Defendant B); (3) Sgt. Ryan Dyer (also referred to as Defendant C); and (4) Lt. Larry Moore.

Claim 1

In Claim 1, Plaintiff asserts a violation of the Eighth Amendment for excessive force by an officer.  Plaintiff alleges that on November 7, 2024, he had been allegedly involved in a combative altercation with Defendant Navarrete and Correctional Officer Justin Nieto.  As officers responded to the active alarm at 1600 hours inside of A-Section dayroom of Building 8, Defendant Huerta-Silva had entered the A-Section doorway and immediately expanded his state issued handheld baton, striking Plaintiff toward the right shoulder area and then, with 2-3 steps in

2

a rushing forward motion, tackled Plaintiff into a "brickwall" position under the observation tower booth directly against the wall.  (ECF No. 10 at 3.)  Plaintiff "had been in a shocking mood" because he "had previously been degraded by" Defendant Navarrete pulling Plaintiff's pants below his waist.  (*Id.*)  As Plaintiff attempted to pull up his pants, Defendant Huerta-Silva approached and immediately performed one strike to Plaintiff and once Defendant Huerta-Silva tackled Plaintiff into the wall, Plaintiff fell with his pants down.  Defendant Huerta-Silva continued to assault Plaintiff, while he was "unarmed and defensively" by repeatedly striking Plaintiff in the head area with his baton switching from the tip of the baton to the bottom, striking Plaintiff 3-6 times each end repeatedly, causing a gash/slash deep severe cut on the right side of Plaintiff's head and causing immediate dizziness and blackouts.  (*Id.*)  Defendant Huerta-Silva "intentionally with a malicious tone [said] 'This what you, get!  You going attack my partner's,' while continuing his 'assault'" on Plaintiff.  (*Id.*)  Plaintiff claims that Defendant Huerta-Silva, with provocation and malicious acts, violated Plaintiff's Eighth Amendment rights while inmate Travon Barber was the floor being detained by Defendant Navarrete, while his knee was in inmate Travon Barber's back.

Claim 2

In Claim 2, Plaintiff asserts a violation of his Eighth Amendment rights.  He alleges that on November 7, 2024, in the Building 8 A-Section Dayroom at approximately 1608, he was being detained by Defendants Huerta-Silva and Dyer and Correctional Officer Oliver Luna.  Plaintiff was being held on his stomach while Defendant Huerta-Silva had his knee in Plaintiff's lower back while correctional Officer Luna grabbed Plaintiff's right bicep to place Plaintiff's hands behind his back and be cuffed.  Defendant Huerta-Silva and Correctional Officer Luna continued to mention "grab leg-restraints" and Defendant Dyer, the Sergeant at the moment, then requested an unknown officer to receive the leg restraints.  While Plaintiff was on the floor of the dayroom, Defendant Huerta-Silva had removed a grey bandana and grey face mask from Plaintiff and thrown both items on the floor.  Plaintiff noticed blood soaked into the bandana and face mask fabric head area.  Plaintiff immediately got frightened "and noticed an Jane Doe Nurse LVN, Dethrage had witnessed the [immediate] injury" to Plaintiff's head area.  (ECF No. 10 at 5.)  As

3

she approached, Plaintiff was on the ground and Defendant Huerta-Silva held him down. A correctional officer requested Defendant Dyer hold Plaintiff's left leg while Defendant Dyer placed the leg restraints on Plaintiff's legs. A correctional officer had come and provided coverage for Correctional Officer Luna while observing the inmates who were not involved. As LVN Dethrage began to approach Plaintiff with "(2) cotton Goth's from an emergency bag she had retrieved to apply it to [Plaintiff's] head injury," Defendant Huerta-Silva mentioned "with malicious tone speaking to LVN Dethrage 'Get Away.'" (*Id.*) Plaintiff claims that Defendant Huerta-Silva "violated [Plaintiff's] (Eighth Amendment) civil rights as, [Defendant] Dyer mention 'Step Away, Step Away,' with hand movements speaking to an stunned, confuse LVN, Nurse Dethrage." (*Id.*) Plaintiff claims that Defendant Dyer "with malicious intent to deprive [Plaintiff] along with Defendant (B) Carlos Huerta-Silva from an severe injury that [Plaintiff] aquired [sic] by Defendant (B) Carlos Huerta-Silva prior to the detainment at the moment" and "with vicious act's to cause further physical harm to [Plaintiff] by refusing an qualified trained LVN, nurse from executing her duties and providing medical care to [Plaintiff]." (*Id.*) Plaintiff asserts that Defendant Huerta-Silva participated to deny Plaintiff's Eighth Amendment and that Defendant Dyer also had violated Plaintiff's Eighth Amendment for participating and refusing Plaintiff the medical care he needed and "LVN, Dethrage for violating [Plaintif's] (Eighth Amendment) right to medical care and [assisting] the refusal of [Plaintiff's] medical care."[1] (*Id.*)

Claim 3

In Claim 3, Plaintiff asserts a violation of his Eighth Amendment rights. Plaintiff alleges that on November 7, 2024, in Building 8, Section A dayroom at approximately 1554 hours, medication distribution was being run and announced. Plaintiff walked out of his assigned living quarters, cell 204 of A-section, by Defendant Jose Navarrete and Correctional Officer Justin Nieto, and headed out the entrance of A-section. At approximately 1600 hours, Plaintiff returned to Building 8. As Plaintiff entered into the entrance of Section A, Plaintiff observed Defendant Jose Navarrete and Correctional Officer Justin Nieto positioned in the middle of A-section

---

[1] LVN Dethrage is not a named defendant in this action.

4

dayroom monitoring inmate movement coming into the building.  As Plaintiff walked through the entrance, he continued to walk by Defendant Jose Navarrete and headed to the stairs.  As Plaintiff got near, he felt eyes staring at him from Correctional Officer Nieto and Defendant Jose Navarrete.  Defendant Jose Navarrete "mentioned with sarcasm 'Aye, Barber.'"  (ECF No. 10 at 7.)  Plaintiff turned around.  Defendant Jose Navarrete mentioned, "I've searched your cell" with a sadistic smile on his face.  (*Id.*)  Plaintiff mentioned "Ok" and continued to turn around to proceed to head up the stairs.   Defendant Jose Navarrete mentioned, "Barber what do you need a cell search [receipt]."  (*Id.*)  Plaintiff turned around completely and proceeded to receive the receipt from Defendant Navarrete.  As Plaintiff approached Defendant Navarrete at approximately 2-3 feet distance, Defendant Navarrete "with provocation, with intention" and unholstered his state issued pepper spray and without command issued out a burst of spray tending to blind Plaintiff.  As Plaintiff attempted to block the burst of spray, Defendant Navarrete's can of spray dropped, and Defendant Navarrete intentionally lowered his entire body and positioned himself to wrap his hands around Plaintiff's lower extremities "and head into [Plaintiff's] groin area" as Correctional Officer Nieto wrapped both of his arms around Plaintiff's upper extremities.  (*Id.*) Defendant Navarrete "started to pull [Plaintiff] below him and also pulling [Plaintiff's] pants below" exposing his butt and genital area while grazing Plaintiff's buttocks, violating plaintiff's Eighth Amendment rights.  (*Id.*)  Plaintiff claims that Defendant Navarrete "intentionally proceeded to degrade and to gain his own sexual gratisfaction [sic]" by performing such acts.  (*Id.*)  At the end of the alleged altercation, Defendant Navarrete and Correctional Officer Nieto bumped fists with each other.

Claim 4

Plaintiff alleges a violation of his Eighth Amendment rights.  He alleges that on November 7, 2024, in the KVSP Bravo Facility program office inside of the hallway, located on the right side of the hallway, is an entrance of a storage room labeled "Holding Cell."  Inside of the storage room were stored supply boxes and 5 holding cells, 1 through 5.  Plaintiff was being escorted by Correctional Officer M. Estrada.  Plaintiff had been placed and assigned to holding cell No. 5 by Correctional Officer M. Estrada.  Two fellow inmates, Travon Barber and Davontae

5

Ray, were also being escorted.  Travon Barber was being escorted by Correctional Officer M. King and was placed inside holding cell No. 1.  Davontae Ray was escorted by Correctional Officer C. Kyt and was placed inside holding cell No. 4.  At approximately 2200 hours, Plaintiff and Inmate Travon Barber requested Officer M. Estrada and Defendant Dyer to use the restroom and to received decontamination.  Defendant Dyer mentioned, "No, you guy's relax and wait."  Plaintiff waited approximately 2 minutes and requested Correctional Officer Vaca to speak to Defendant Dyer.  As Defendant Dyer approached the entrance of the storage, Plaintiff requested if he could "please use the restroom it is urgent."  (ECF No. 10 at 8.)  Defendant Dyer looked at Plaintiff with a smiling face and shook his head.  He looked directly at Inmate Travon Barber and mentioned, "Stop, moving all you are doing is re-activating the spray," meaning the state issued pepper spray.  Inmate Travon Barber had been sprayed by a correctional officer.  Inmate Travon Barber had spoken to Defendant Dyer to receive a new shirt.  Defendant Dyer said no.  Plaintiff repeated "urgency to use the restroom" and Defendant Dyer mentioned "602 it" and closed the storage door shut.  Plaintiff claims that Defendant Dyer denied Plaintiff "with provocation and malicious cruel acts" and violated Plaintiff's civil rights to deprive him from the utilities and "closing and confining [Plaintiff] in a horric [sic] environment by being confined in the holding cell's form more than (10) hour's" and Defendant Dyer "trapping [Plaintiff} in a closed confined quarter's" and being detained in "horric [sic] condition's" with [illegible] amount of urine and fiece's [sic] inside of each inmate cage." (*Id.*)  Plaintiff claims that Defendant Larry Moore position in the program office and under his supervision had also participated in the act of violating Plaintiff's Eighth Amendment rights.

Claim 5

On November 7, 2024, In Building 8, Section A, cell 204, Plaintiff was assigned to the upper bunk.  At approximately 1600 hours, an altercation transpired with Plaintiff and Defendants Navarrete, Huerta-Silva, and Dyer.  During the incident, Plaintiff's shoes came off and were separated in the A section dayroom.  Plaintiff's personal shoes were left in the dayroom of A-section Building 8 while he was being escorted by Correctional Officers M. Estrada and C. Marqueze out of the building in his socks.  Plaintiff asked if he could receive his shoes.

6

Defendants Navarrete, Huerta-Silva, and Ryan said, "No, remove him out the building" to Correctional Officers Estrada and Marqueze. (ECF No. 10 at 9.) As Plaintiff arrived in the program office of Bravo Facility, Plaintiff immediately requested to receive an inmate inventory property form (1083) so he would have knowledge his shoes had been picked up. Plaintiff asked Defendant Moore if he could have his personal property packed and receive a 1083. Defendant Moore mention, "Just shut up You Guy's hurt my officer's" and Defendant Moore intentionally denied Plaintiff the right to have knowledge of his property items. Plaintiff claims that he has been immediately removed from KVSP grounds without his personal property on November 8, 2024 at approximately 0845. Plaintiff has reached Defendant Moore through Property Officer Johnson of the Substance Abuse Treatment Facility and "was denied and told (R&R Reciving [sic] & Releasing have [Plaintiff] property and Officer Johnson . . . contacted Kern Valley State Prison (R&R) Receiving & Releasing do the Sgt. of (R&R) have possession of [Plaintiff's] property and (R&R), Sgt. Garcia mention 'No,' to 602 the property." (Id.) Plaintiff has exhausted all levels of the grievance process. Defendant Moore participated and supervised the order of Plaintiff's property being inventoried and packed and failed to do so with malicious acts by "premediated deprivation of an inmate property." (Id.)

As relief, Plaintiff seeks monetary damages.

### III.    Discussion

### A.    Federal Rule of Civil Procedure 8

Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556–57; Moss, 572 F.3d at 969.

Plaintiff's amended complaint is not a short and plain statement of his claims. Plaintiff's

7

factual allegations are not in chronological order, and Plaintiff does not clearly state what happened, when it happened, or who was involved.  Further, many of Plaintiff's allegations are disjointed or conclusory, and he omits pertinent factual allegations.  Despite being provided with the relevant pleading standard, Plaintiff has been unable to cure this deficiency.

### B.    Supervisory Liability

Plaintiff seeks to impose supervisory liability against Defendant Moore in this action. However, liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir.2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).

Supervisory liability may not be imposed against Defendant Moore for the actions of other KVSP defendants or officers.  Plaintiff has not adequately alleged that Defendant Moore participated in or directed any of the alleged constitutional violations or implemented a policy so deficient that it was the moving force of any constitutional violation.

In Claim 4, Plaintiff appears to impose liability on Defendant Moore merely because of his presence in the program office and as a supervisor.  However, Plaintiff fails to include allegations in Claim 4 involving prison policies or linking the actions of Defendant Moore to any deprivation of Plaintiff's constitutional rights.  In Claim 5, Plaintiff appears to impose liability against Defendant Moore based on the loss of his shoes, but he fails to include any allegations in that claim involving prison policies or linking the actions of Defendant Moore to any deprivation

of Plaintiff's constitutional rights.

### C.   Eighth Amendment

#### 1.   Excessive Force

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v McMillian*, 503 U.S. 1, 5 (1992) (citations omitted). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quotations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).  The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees. *See Whitley*, 475 U.S. at 320-21.

In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7. The absence of an emergency situation is probative of whether force was applied maliciously or sadistically. *See Jordan v. Gardner*, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc). Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials. *See Whitley*, 475 U.S. at 321-22.

The Court cannot conclude that Plaintiff states a cognizable claim for excessive force in

violation of the Eighth Amendment against Defendant Huerta-Silva as Plaintiff fails to include relevant factual allegations concerning the circumstances involving the use of force.  According to the allegations in Claim I, Plaintiff was involved in a "combative" altercation with Defendant Navarrete and Correctional Officer Nieto in the dayroom, and that officers, including Defendant Huerta-Silva, responded to an active alarm.  Plaintiff fails to adequately allege that Defendant Huerta-Silva's subsequent use of force was not applied in a good-faith effort to maintain or restore discipline following the combative altercation.  Plaintiff's allegations regarding the active alarm suggest that Defendant Huerta-Silva was responding to an emergency situation and that Defendant Huerta-Silva was responding to Plaintiff's "attack" on another officer.  Plaintiff does not allege that the altercation with Defendant Navarrete and Correctional Officer Nieto had concluded when Defendant Huerta-Silva responded or that Plaintiff was complying with orders during the incident involving Defendant Huerta-Silva.  Plaintiff's conclusory allegations that Defendant Huerta-Silva acted maliciously are not sufficient to state a cognizable claim.

Plaintiff also fails to state a cognizable claim for excessive force against Defendant Navarrete for pepper spraying Plaintiff from an approximately 2-3 distance, wrapping his hands around Plaintiff's lower extremities, and positioning his head into Plaintiff's groin area. According to Plaintiff's allegations, Defendant Navarrete acted with provocation.  Plaintiff also alleges in the complaint that he was involved in a combative altercation with Defendant Navarrete and Correctional Officer Nieto.

Plaintiff does not state a cognizable excessive force claim against Defendant Dyer. Plaintiff alleges only that Defendant Dyer requested leg restraints and that he placed the leg restraints on Plaintiff.

### 2. Medical Care

A prisoner's claim of inadequate medical care constitutes cruel and unusual punishment in violation of the Eighth Amendment where the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure

to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096.

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cty. Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. *Jett*, 439 F.3d at 1096. In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir. 2012) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation marks omitted).

Plaintiff fails to state a cognizable claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment against Defendants Huerta-Silva and Dyer. Plaintiff alleges that there was blood on his bandana and face mask, and that he had suffered a gash/slash

11

deep severe cut on the right side of his head.  However, he fails to adequately allege that Defendants Huerta-Silva or Dyer knew of and disregarded a risk to Plaintiff's health or safety or that they were deliberately indifferent to a serious medical need.  Further, the allegations in the amended complaint suggest that LVN Dethrage began to approach Plaintiff and was told to get away or step away because Defendants were in the process of restraining Plaintiff.  Defendant Huerta-Silva was holding Plaintiff down and Defendant Ryan was attempting to place leg restraints on Plaintiff.

### 3.  Sexual Misconduct

"Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment." *Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir. 2012) (*citing Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000)). "In the simplest and most absolute of terms ... prisoners [have a clearly established Eighth Amendment right] to be free from sexual abuse ...." *Schwenk*, 204 F.3d at 1197. "In evaluating a prisoner's claim, courts consider whether 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Wood*, 692 F.3d at 1046. "[A] prisoner presents a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." *Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020).

Plaintiff's amended complaint fails to state a cognizable claim for sexual misconduct against Defendant Navarrete.  Plaintiff alleges that Defendant Navarrete pulled Plaintiff's pants down below his waist and grazed Plaintiff's bottom.  In the context of the alleged use of force by Defendant Navarrete during a combative altercation, these allegations of wrongdoing are not objectively harmful to establish a constitutional violation.  Further, Plaintiff's conclusory allegations that Defendant Navarrete acted with a sufficiently culpable state of mind are not sufficient.

///

12

### 4. Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  *Farmer*, 511 U.S. at 832; *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety.  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted).  To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference . . ."  *Labatad v. Corrs. Corp. of Amer.*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834.  Second, subjectively, the prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).  The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson*, 217 F.3d at 731.

Temporary placement in administrative segregation or a holding cell has been found not to rise to the level of a constitutional violation. *See Stafford v. Doss*, No. 2:16-CV-1403-JAM-DMC, 2021 WL 3563490, at *12 (E.D. Cal. Aug. 12, 2021) (four hours in temporary holding cell did not rise to level of Eighth Amendment violation), report and recommendation adopted, 2021 WL 4356036 (E.D. Cal. Sept. 24, 2021); *see also Anderson*, 45 F.3d 1310, as amended, 75 F.3d 448 (9th Cir. 1995) (placement in administrative segregation for "most of the day" did not satisfy objective prong of Eighth Amendment).

Plaintiff's amended complaint fails to state a conditions of confinement claim.  Plaintiff alleges that on November 7, 2024, he was placed in a cage for more than 10 hours, he was denied use of the restroom, and there was urine and feces inside each cage.  Plaintiff has not alleged a serious condition violative of the Eighth Amendment by these temporary conditions. *Anderson*,

13

45 F.3d at 1315 (no constitutional violation for placement in safety cages where plaintiffs had not shown that sanitary limitations imposed upon them were more than temporary); *Chiprez v. Warden*, No.1:21-cv-00668-DAD-BAM (PC), 2021 WL 3662390, at *3 (E.D. Cal. Aug. 18, 2021), report and recommendation adopted sub nom. *Chiprez v. Warden*, No. 1:21-cv-00668-DAD-BAM PC, 2021 WL 4192035 (E.D. Cal. Sept. 15, 2021), aff'd, No. 21-16588, 2022 WL 4298143 (9th Cir. Sept. 19, 2022) ("Temporary deprivations of sanitation, water, and shelter that last only a short amount of time and do not pose a serious threat of harm to the prisoner do not give rise to deprivations that are sufficiently serious to support an Eighth Amendment claim.").

### D.    Fourteenth Amendment – Deprivation of Property

Insofar as Plaintiff also alleges that KVSP officers wrongfully lost and abandoned his property, these allegations also are not sufficient to support a cognizable claim.  Prisoners have a protected interest in their personal property.  *Hansen v. May,* 502 F.2d 728, 730 (9th Cir. 1974).  An authorized, intentional deprivation of property is actionable under the Due Process Clause.  *See Hudson v. Palmer*, 468 U.S. 517, 532 n.13 (1984) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36 (1982)); *Quick v. Jones,* 754 F.2d 1521, 1524 (9th Cir. 1985).  However, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533.

Plaintiff appears to contend that his property was lost and abandoned by John Doe officers.  As the alleged conduct was an unauthorized deprivation of property, due process is satisfied if there is a meaningful post-deprivation remedy available to Plaintiff.  *Hudson*, 468 U.S. at 533. Plaintiff has an adequate post-deprivation remedy available under California law.  *Barnett v. Centoni,* 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–95).  Therefore, Plaintiff fails to allege a cognizable due process claim for the alleged deprivation of his property.

### IV.    Conclusion and Recommendation

The Court finds that Plaintiff's amended complaint fails to comply with Federal Rule of Civil Procedure 8 and fails to state a cognizable claim for relief.  Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the deficiencies.  Further

14

leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, the Court HEREBY DIRECTS the Clerk of the Court to randomly assign a district judge to this action.

Further, for the reasons stated above, it is HEREBY RECOMMENDED that this action be dismissed for failure to state a cognizable claim upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages or include exhibits. Exhibits may be referenced by document and page number if already in the record before the Court. Any pages filed in excess of the 15-page limit may not be considered.** Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 27, 2026**            /s/ *Barbara A. McAuliffe*
                                                    UNITED STATES MAGISTRATE JUDGE

15